## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 CR 50050-1 |
| | ) | Judge Iain D. Johnston |
| Frank Howard, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Frank Howard has filed a motion under the First Step Act seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his risk of complications from COVID-19 because of obesity. For the reasons that follow, Mr. Howard's motion [62] is denied.

## BACKGROUND

Mr. Howard pleaded guilty to one count of possession with intent to distribute 126.4 grams of cocaine, *see* 21 U.S.C. § 841(a)(1). Dkt. 22. He also admitted to relevant conduct consisting of selling cocaine to a confidential informant on four other occasions, and to numerous previous convictions that make him a career offender. Dkt. 22. At sentencing, United States District Judge Kapala, who has since taken inactive senior status, calculated his sentencing range as a career offender to be 151 to 188 months and imposed a 180-month sentence. Dkts. 40, 52 at 23-24. Mr. Howard appealed, but his attorney sought to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because the appeal was frivolous. Dkt. 60. The Seventh Circuit agreed and dismissed the appeal. Dkt. 60. Mr. Howard's projected release date is June 10, 2031. Motion [72] at 3.

Mr. Howard now seeks compassionate release under the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A)(i). He contends that his obesity puts him at greater risk of developing serious complications should he contract COVID-19, and therefore provides an extraordinary and compelling reason to grant him compassionate release.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons or by the defendant himself. 18 U.S.C. § 3582(c)(1)(A). A reduction under § 3582(c)(1)(A)(i) may be based only on "extraordinary and compelling reasons," and must take into account the sentencing factors set out at 18 U.S.C. § 3553(a). The defendant bears the burden of establishing that he or she is entitled to compassionate release under the First Step Act. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020). Before filing such a motion, a defendant must first ask his warden

to seek a reduction on his behalf and either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A). It is undisputed that Mr. Howard exhausted his administrative remedies before filing his motion under the First Step Act. Response [77] at 12.

The Court prefaces its analysis of Mr. Howard's arguments with the recognition that it, as well as the rest of the world, is still learning about the virus and therefore, is making its best judgments based upon the information that is currently available. *See, e.g., Cassell, et al., v. Snyders*, 990 F.3d 539, 549 (7th Cir. 2021) ("Governments and citizens have thus been forced to act with imperfect knowledge."). According to Mr. Howard's motion, he suffers from obesity based upon his Body Mass Index of 33.8, which puts him at increased risk of severe illness from the virus that causes COVID-19. Motion [62] at 6. The government concedes that Mr. Howard's obesity is a medical condition that "arguably" establishes an extraordinary and compelling reason for consideration of a sentence reduction under the First Step Act. Response [77] at 13. Based on that concession, which is consistent with CDC guidelines[1], the Court concludes that Mr. Howard does suffer a condition that places him at an increased risk of severe illness from the virus that causes COVID-19.

However, that does not end the Court's inquiry. In exercising its discretion, a court may take into consideration the state of the pandemic and an institution's efforts to contain it. *See United States v. Young*, 834 Fed. Appx. 268, 269-70 (7th Cir. 2021). In his original motion filed in February 2021, Mr. Howard argued that his facility, FCI Milan, fails to keep inmates and staff safe, for instance housing inmates in an open dormitory without social distancing. Motion [62] at 8. He also argues that FCI Milan fails to test inmates for COVID, and thereby fails to control the spread of the virus. *Id.* As a result, Mr. Howard argues, FCI Milan is "suffering from a wide spread of COVID-19 [within] the facility . . . despite its best effort . . . to stop the spread of the virus." *Id.* But FCI Milan appears to have significantly curtailed the spread of the virus, and currently reports no cases of COVID-19 among inmates and 1 case among staff. *See* https://www.bop.gov/coronavirus/index.jsp (last visited September 22, 2021). In addition, on June 7, 2021, the government filed a medical record indicating that Mr. Howard received his first dose of the Pfizer COVID-19 vaccine on May 28, 2021. Dkt. 79. Although neither side has filed anything since and so there is no record of Mr. Howard's second dose, in the absence of any word from Mr. Howard that he was refused his second dose, the Court presumes it was made available to him. "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

Mr. Howard also urges the Court to consider that his incarceration has been more brutal than normal because of isolation during lockdowns implemented to stop the spread of the virus, as well as the fear of contracting the virus. Supplemental Brief [72] at 8. Other courts have deemed the harshness of prison life during a pandemic to be a relevant consideration for a motion for compassionate release. *See, e.g., United States v. Crumble*, No. 16 CR 102, 2021 U.S. Dist. LEXIS 97626, at *15-16 (E.D. Wisc. May 24, 2021). But those courts look for particularities on how that defendant's experience has been altered, rather than the generalities

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 22, 2021).

Mr. Howard has offered.  In any event, isolation and fear during the pandemic have also adversely affected persons who are not incarcerated.  *See* https://www.cdc.gov/mentalhealth/stress-coping/cope-with-stress/index.html ("Public health actions, such as social distancing, are necessary to reduce the spread of COVID-19, but they can make us feel isolated and lonely and can increase stress and anxiety.") (last visited September 22, 2021).

The Court's review of the sentencing factors set out in 18 U.S.C. § 3553(a) also do not favor any reduction to Mr. Howard's sentence.  Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are the following:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)     to afford adequate deterrence to criminal conduct;
(C)     to protect the public from future crimes by the defendant; and
(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2).  To those ends, the court must consider the following factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

. . .

(3)     the kinds of sentence available;
(4)     the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
(5)     any pertinent policy statement [in the Sentencing Guidelines];
(6)     the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

Mr. Howard's offense was very serious because it involved significant quantities of cocaine.  In his motion, he portrays his offense as "a non-violent crime and it did not cause physical injury."  Motion [62] at 10.  But his minimization ignores that he intended to financially profit from the addictions of others, spread the scourge of drugs within the Rockford community, and was willing to risk the violence that can accompany the drug trade.

The Court also considers Mr. Howard's serious criminal history.  His first reported offense occurred when he was just 12 years old.  He was placed on court supervision for battery, but his supervision was revoked when he violated its terms by fighting at school.  Presentence Investigation Report ("PSR") [23] at 9.  His crimes continued into adulthood, and in his plea

agreement he stipulated to prior drug offenses in 2000, 2003, 2006, and 2007, each of which resulted in significant terms of incarceration ranging from 5 to 18 years' imprisonment. Dkt. 22 at 6-7. His PSR also details numerous other convictions for traffic offenses such as driving on a suspended license and driving uninsured, as well as resisting arrest, illegal transportation of alcohol, and criminal trespass to land, PSR [23] at 18-26. He also has a history of violating the conditions of his release. His PSR details past instances of a court revoking his parole after he committed additional offenses while released. PSR [23] at 21, 22. Indeed, the defendant committed the instant drug offense while on parole for prior drug offenses. *Id.* at 25, 26, 28.

In addition to evidence that was available to the sentencing judge, this Court is also able to take into account evidence of Mr. Howard's post-sentencing history and characteristics. Mr. Howard notes that he has earned his GED, participated in numerous rehabilitative classes, and has obtained employment as a full-time plumber at his facility. Motion [62] at 13. In his supplemental brief his counsel also notes that he has had no disciplinary history while at FCI Milan, and that he has paid off his financial obligations. The Court also considers his post-release plans, which include living in Freeport with his fiancé and their three-year-old daughter—he hopes to be a "loving father to his daughter," and to provide for them by obtaining employment and medical insurance. Motion [62] at 14. The Court has also read a letter from his fiancé, who hopes Mr. Howard will be able to resume caring for their daughter while she works as a registered nurse.

The Court commends Mr. Howard for all of his accomplishments, including furthering his education and obtaining life and job skills that will benefit him once released. His hard work and dedication will serve him well upon his release and reintegration into society. However, the Court must balance those favorable aspects of Mr. Howard's history and characteristics against the less favorable aspects, such as his long history of criminal conduct. While Mr. Howard contends that he "presents a low risk of re-offending," Motion [62] at 13, his multiple instances of committing drug offenses while on parole for previous drug offenses does not support his contention.

On balance, considering both his current accomplishments as well as his history and characteristics and the serious nature of his offense, the Court is not convinced by Mr. Howard's assertions that should be released or confined at home because he presents no risk of recidivism and poses no danger to the community. His prior periods in custody did not deter him from committing additional offenses. Nor did the fact that he was helping care for his daughter during the period he committed the instant offense. The Court is also concerned by his admission that he used cocaine daily through the date of his arrest on the instant offense, PSR [23] at 35, which overlaps with the time during which he was reportedly caring for his infant daughter. As a result, even though Mr. Howard has identified an extraordinary and compelling reason for reducing his sentence under the First Step Act, the Court's review of the sentencing factors and the widespread availability of vaccines do not leave it inclined to grant any reduction.

One final note. Mr. Howard's counsel also asks the Court to take into account *United States v. Ruth*, 966 F.3d 642, 650 (7th Cir. 2020), in which the Seventh Circuit held that because Illinois law defines cocaine more broadly than federal law, certain Illinois convictions cannot be used as predicate offenses when determining whether a defendant is subject to a sentencing

enhancement under 21 U.S.C. § 841(b)(1). Mr. Howard was not sentenced based on an enhancement under 21 U.S.C. § 841(b)(1), but rather he was sentenced as a career offender under U.S.S.G. § 4B1.1. As counsel acknowledges, *Ruth* explicitly states that it is inapplicable to the career offender enhancement under U.S.S.G. § 4B1.1. *See Ruth*, 966 F.3d at 651-54.

## CONCLUSION

For the reasons given, Mr. Howard's motion for a sentence reduction under the First Step Act [62] is denied.

Date: September 23, 2021      By: _____

                                       Iain D. Johnston
                                       United States District Judge